T.C. Memo. 2017-198

UNITED STATES TAX COURT

NERSONN D. JUSTINE AND CARLINE CHARLOT JUSTINE, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9163-16.                          Filed October 4, 2017.

Nersonn D. Justine and Carline Charlot Justine, pro sese.

Tara P. Volungis, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined deficiencies in, and accuracy-
related penalties under section 6662(a)[1] on, petitioners' Federal income tax (tax)
as follows:

_____

[1]All section references are to the Internal Revenue Code (Code) in effect for
the years at issue.  All Rule references are to the Tax Court Rules of Practice and
Procedure.

[*2]

| Year | Deficiency | Accuracy-Related Penalty Under Sec. 6662(a) |
|------|------------|---------------------------------------------|
| 2012 | $18,366 | $2,210.20 |
| 2013 | 20,708 | 2,750.00 |
| 2014 | 23,775 | 4,155.00 |

The issues remaining for decision for each of the years at issue are:

(1) Is petitioner Nersonn D. Justine entitled to deduct certain claimed miscellaneous expenses? We hold that he is not.

(2) Does petitioner Nersonn D. Justine have certain unreported income from a certain business that he operated? We hold that he does.

(3) Is petitioner Nersonn D. Justine entitled to deduct certain claimed expenses relating to a certain business that he operated? We hold that he is not.

(4) Is petitioner Nersonn D. Justine liable for the accuracy-related penalty under section 6662(a)? We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.[2]

---

[2]Although petitioner, Carline Charlot Justine (Ms. Justine), signed the stipulation of facts, she did not appear at the trial in this case. Respondent filed a motion to dismiss for lack of prosecution as to her. We shall grant that motion and
(continued...)

[*3]   Petitioners resided in Massachusetts at the time they filed the petition.

During at least 2012 and 2013, two of the years at issue, Mr. Justine was a taxicab driver for Boston Cab Co. (taxicab business).[3]  During at least the last three months of 2013 through 2014, he was also a driver for Uber (Uber business). (We shall sometimes refer collectively to the taxicab business and the Uber business that Mr. Justine operated as the transportation business.)

Throughout the years at issue, Mr. Justine received in cash most of the remuneration from, and he paid in cash many of the expenses for, the transportation business that he operated.  However, during those years, he did not maintain books or adequate records with respect to the receipts or expenses relating to that business.

With respect to Mr. Justine's taxicab business, during 2012 and 2013, Boston Cab Co. through an organization known as Creative Mobile Technologies, LLC (CMT), often paid him for his work in cash by having money deposited into a commercial prepaid card account that he maintained in his name at Bank of

---

[2](...continued)
shall enter a decision with respect to Ms. Justine that is the same as the decision that we shall enter with respect to petitioner, Nersonn D. Justine (Mr. Justine).

[3]The record is not clear as to whether Mr. Justine operated the taxicab business during 2014.

[*4] America.[4]  CMT issued to Mr. Justine for each of his taxable years 2012 and 2013 Form 1099-K, Payment Card and Third Party Network Transactions (Form 1099-K).  Form 1099-K for Mr. Justine's taxable year 2012 showed $26,189.65 as the "Gross amount of merchant card/third party network payments".  Form 1099-K for Mr. Justine's taxable year 2013 showed $12,790.52 as the "Gross amount of merchant card/third party network payments".

With respect to Mr. Justine's Uber business, at least during the last three months of 2013 through 2014, Uber through an organization known as Rasier, LLC (Rasier), often paid him for his work in cash by having money deposited into a bank account that Ms. Justine and her mother, Florisane Estime (Ms. Estime), maintained in their names at Eastern Bank.[5]  Rasier issued to Mr. Justine for his taxable year 2014 Form 1099-K that showed $23,253.35 as the "Gross amount of payment card/third party network transactions".  Rasier also issued to Mr. Justine for his taxable year 2014 Form 1099-MISC, Miscellaneous Income, that showed $811.89 as "Nonemployee compensation".

---

[4]The record is not clear as to whether Boston Cab Co. also paid Mr. Justine in cash for his work by giving him cash directly instead of having money deposited into an account maintained at a bank or other financial institution.

[5]The record is not clear as to whether Uber also paid Mr. Justine in cash for his work by giving him cash directly instead of having money deposited into an account maintained at a bank or other financial institution.

[*5]    In addition to operating the transportation business, Mr. Justine worked during 2012, 2013, and 2014 as a bus driver for NRT Bus, Inc. (NRT), for which he was paid wages.  The wages that NRT paid Mr. Justine during 2012 for his work were not deposited into a bank account in that year.  Beginning in November 2013, NRT paid Mr. Justine in cash for his work by having money deposited into a bank account that he maintained in his name at Bank of America, which was in addition to the commercial prepaid card account that he maintained in his name at that bank.  NRT issued Form W-2, Wage and Tax Statement (Form W-2), to Mr. Justine for each of the years at issue for the work that he had performed for it during each of those years.

During at least 2013 and 2014, Mr. Justine also worked as a truck driver for Robert E. Florence Trucking, Inc. (Florence Trucking), for which he was paid wages.  Florence Trucking issued Form W-2 to Mr. Justine for each of his taxable tears 2013 and 2014 for the work that he had performed for it during each of those years.

During at least 2014, Mr. Justine operated a tax return preparation service known as Justine Tax Plus for which he charged each customer a fee.  He did not maintain any books or records with respect to the receipts or expenses relating to that business.

[*6]   During 2012, 2013, and 2014, Ms. Justine worked for Northeast Professional Registry of Nurses (Nursing Registry) as a nursing assistant.  During 2012 and 2014, she also worked for Northeast ARC (ARC) as a nursing assistant. Those respective organizations paid Ms. Justine wages for the work that she had performed for them during one or more of the years at issue.  Nursing Registry issued Form W-2 to Ms. Justine for each of the years at issue for the work that she had performed for it during each of those years.  ARC issued Form W-2 to Ms. Justine for each of her taxable years 2012 and 2014 for the work that she had performed for it during each of those years.

Petitioners filed Form 1040, U.S. Individual Income Tax Return (return), for their taxable year 2012 (2012 return) that Mr. Justine had prepared.  In that return, petitioners showed wages of $18,209.

Petitioners included Schedule A, Itemized Deductions (Schedule A), as part of their 2012 return (2012 Schedule A).  In that schedule, they claimed, inter alia, "Medical and Dental Expenses" of $2,999 (claimed 2012 medical expenses), "Taxes You Paid" of $4,367 (claimed 2012 taxes paid),[6] "Gifts to Charity" of

---

[6]The claimed 2012 taxes paid consisted of claimed State and local income taxes of $1,204, claimed real estate taxes of $2,603, and claimed personal property taxes of $560.

[*7] $3,735 (claimed 2012 charitable gifts),[7] and "Job Expenses and Certain Miscellaneous Deductions" of $3,235 (claimed 2012 unreimbursed employee expenses).

Petitioners included Schedule C, Profit or Loss From Business (Schedule C), with respect to Mr. Justine's transportation business as part of their 2012 return (2012 Schedule C). In that schedule, petitioners reported "Gross receipts or sales" and "Gross Income" of $54,992 and claimed total expenses of $47,875 (claimed 2012 Schedule C expenses). The claimed 2012 Schedule C expenses consisted of the following:

| Expense | Amount |
| --- | --- |
| Advertising | $280 |
| Rent/lease--vehicle | 4,680 |
| Rent/lease--other | 28,793 |
| Repairs & maintenance | 2,650 |
| Supplies | 1,350 |
| Taxes & licenses | 452 |
| Meals & entertainment | 3,780 |
| Utilities | 5,890 |

---

[7]The claimed 2012 charitable gifts consisted of claimed charitable gifts by cash or check of $3,235 and claimed charitable gifts other than by cash or check of $500.

[*8]  Petitioners filed a return for their taxable year 2013 (2013 return) that Mr. Justine had prepared.  In that return, petitioners showed wages of $23,766.

Petitioners included Schedule A as part of their 2013 return (2013 Schedule A).  In that schedule, they claimed, inter alia, "Medical and Dental Expenses" of $5,280 (claimed 2013 medical expenses), "Taxes You Paid" of $4,712 (claimed 2013 taxes paid),[8] "Gifts to Charity" of $4,370 (claimed 2013 charitable gifts),[9] and "Job Expenses and Certain Miscellaneous Deductions" of $10,398 (claimed 2013 unreimbursed employee expenses).

Petitioners included Schedule C with respect to Mr. Justine's transportation business as part of their 2013 return (2013 Schedule C).  In that schedule, petitioners reported "Gross receipts or sales" and "Gross Income" of $23,944 and claimed total expenses of $22,383 (claimed 2013 Schedule C expenses).  The claimed 2013 Schedule C expenses consisted of the following:

---

[8]The claimed 2013 taxes paid consisted of claimed State and local income taxes of $722, claimed real estate taxes of $2,720, and claimed personal property taxes of $1,270.

[9]The claimed 2013 charitable gifts consisted of claimed charitable gifts by cash or check of $3,870 and claimed charitable gifts other than by cash or check of $500.

[*9]

| Expense | Amount |
|---|---|
| Advertising | $150 |
| Car & truck | 3,141 |
| Insurance other than health | 1,540 |
| Rent/lease--other | 5,740 |
| Repairs & maintenance | 2,650 |
| Supplies | 790 |
| Taxes & licenses | 32 |
| Meals & entertainment | 2,100 |
| Utilities | 6,240 |

Petitioners filed a return for their taxable year 2014 (2014 return) that Mr. Justine had prepared. In that return, petitioners showed wages of $73,702.

Petitioners included Schedule A as part of their 2014 return (2014 Schedule A). In that schedule, they claimed, inter alia, "Taxes You Paid" of $7,243 (claimed 2014 taxes paid),[10] "Gifts to Charity" of $6,100 (claimed 2014 charitable

---

[10]The claimed 2014 taxes paid consisted of claimed State and local income taxes of $2,894, claimed real estate taxes of $2,679, and claimed personal property taxes of $1,670.

[*10] gifts),[11] and "Job Expenses and Certain Miscellaneous Deductions" of $22,447 (claimed 2014 unreimbursed employee expenses).

Petitioners included Schedule C with respect to Mr. Justine's transportation business as part of their 2014 return (2014 Schedule C). In that schedule, petitioners reported "Gross receipts or sales" and "Gross Income" of $24,065 and claimed total expenses of $29,480 (claimed 2014 Schedule C expenses). The claimed 2014 Schedule C expenses consisted of the following:

| Expense | Amount |
|---|---|
| Depreciation & sec. 179 | $12,000 |
| Insurance other than health | 1,440 |
| Rent/lease--other | 4,560 |
| Repairs & maintenance | 2,450 |
| Supplies | 700 |
| Taxes & licenses | 50 |
| Meals & entertainment | 1,800 |
| Utilities | 1,280 |
| Other--gas | 5,200 |

---

[11]The claimed 2014 charitable gifts consisted of claimed charitable gifts by cash or check of $5,600 and claimed charitable gifts other than by cash or check of $500.

**[*11]** Petitioners did not include Schedule C with respect to Mr. Justine's tax return preparation business as part of their 2014 return.

At a time not established by the record, respondent commenced an examination of petitioners' taxable years 2012, 2013, and 2014. As part of that examination, respondent's revenue agent (revenue agent) assigned to that examination prepared a bank deposits analysis for each of those years (respondent's bank deposits analysis) on the basis of his examination of the various respective accounts that Mr. Justine and Ms. Justine and her mother, Ms. Estime, maintained at Bank of America and Eastern Bank (collectively, accounts). Respondent's bank deposits analysis showed for each of petitioners' taxable years 2012, 2013, and 2014, inter alia, the total amount of deposits into each of the accounts during each month. In preparing respondent's bank deposits analysis, the revenue agent attempted to ascertain whether any of the deposits into each of the accounts during each of the years at issue is nontaxable or was previously taxed. In this connection, in preparing respondent's bank deposits analysis for each of the years at issue, the revenue agent reduced the total deposits into each of the accounts during each of those years by any of the following nontaxable deposits or previously taxed deposits: Mr. Justine's wages, Ms. Justine's wages, Ms. Estime's Social Security payments, tax refunds, transfers from credit cards, and creditor refunds of

**[\*12]** returned items.  The revenue agent concluded that after those reductions the balance of the total deposits into each of the accounts during each of the years at issue constitutes unreported Schedule C gross receipts for each of those years.

Respondent issued a notice of deficiency (notice) to petitioners for their taxable years 2012, 2013, and 2014.  In that notice, respondent determined to disallow the following expenses that petitioners claimed in their 2012 Schedule A (claimed 2012 Schedule A expenses), their 2013 Schedule A (claimed 2013 Schedule A expenses), and their 2014 Schedule A (claimed 2014 Schedule A expenses):[12]  all of their claimed 2012 medical expenses, all of their claimed 2013 medical expenses, $955 of their claimed 2012 charitable gifts,[13] $569 of their claimed 2012 taxes paid, $868 of their claimed 2013 taxes paid, $1,558 of their claimed 2014 taxes paid, all of their claimed 2012 unreimbursed employee

---

[12]Respondent also determined to increase certain of the expenses that petitioners claimed in their 2012 Schedule A, their 2013 Schedule A, and their 2014 Schedule A.

[13]Respondent disallowed in the notice the respective entire amounts of the claimed 2013 charitable gifts other than by cash or check and the claimed 2014 charitable gifts other than by cash or check.  However, respondent increased the respective entire amounts of the claimed 2013 charitable gifts by cash or check and the claimed 2014 charitable gifts by cash or check in such respective amounts that respondent allowed petitioners in the notice respective charitable contribution deductions for their taxable years 2013 and 2014 in respective amounts that exceeded the deductions that they had reported in their respective 2013 return and 2014 return.

[*13] expenses, all of their claimed 2013 unreimbursed employee expenses, and all of their claimed 2014 unreimbursed employee expenses. (We shall refer collectively to the claimed 2012 Schedule A expenses, the claimed 2013 Schedule A expenses, and the claimed 2014 Schedule A expenses that respondent disallowed in the notice and that petitioners dispute here as the claimed Schedule A expenses at issue.)

In the notice, respondent also determined to increase gross receipts that petitioners reported in their 2012 Schedule C, their 2013 Schedule C, and their 2014 Schedule C in the respective amounts of $10,155, $41,446,[14] and $40,941. In doing so, respondent relied on respondent's bank deposits analysis. (We shall refer to the respective increases in the notice in gross receipts that petitioners reported in their 2012 Schedule C, their 2013 Schedule C, and their 2014 Schedule C in and that they dispute here as the unreported Schedule C gross receipts at issue.) In the notice, respondent further determined to disallow all of their claimed

---

[14]Respondent points out on brief that the amount of total deposits reduced by nontaxable or previously taxed income for petitioners' taxable year 2013 (i.e., $65,390) that respondent reflected in the notice is $231.27 less than the actual amount of such deposits for that year (i.e., $65,621.27) determined under respondent's bank deposits analysis. Respondent stipulated that respondent will use the lesser amount reflected in the notice. Respondent also conceded at trial and concedes on brief that the amount of unreported gross receipts for petitioners' taxable year 2013 (i.e., $41,446) that respondent determined in the notice should be reduced to $39,333 by $2,113 of unemployment compensation.

**[*14]** 2012 Schedule C expenses, all of their claimed 2013 Schedule C expenses, and all of their 2014 Schedule C expenses. (We shall refer collectively to the claimed 2012 Schedule C expenses, the claimed 2013 Schedule C expenses, and the claimed 2014 Schedule C expenses that respondent disallowed in the notice and that petitioners dispute here as the claimed Schedule C expenses at issue.)

Respondent also determined in the notice that petitioners are liable for each of the years at issue for the accuracy-related penalty under section 6662(a).

OPINION

Mr. Justine bears the burden of establishing that the determinations in the notice that remain at issue are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Moreover, deductions are a matter of legislative grace, and Mr. Justine bears the burden of proving entitlement to any deduction claimed. See INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The Code and the regulations thereunder required Mr. Justine to maintain records sufficient to establish the amount of any deduction claimed. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

We begin by summarizing our evaluation of the testimony of Mr. Justine, the only witness at the trial in this case. We found his testimony to be uncorroborated, self-serving, and/or conclusory in certain material respects. We are

**[\*15]** unwilling to, and we shall not, rely on Mr. Justine's uncorroborated, self-serving, and/or conclusory testimony to establish his position with respect to each of the issues presented. See, e.g., Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). Mr. Justine presented no documentary evidence that establishes his respective positions with respect to the claimed Schedule A expenses at issue, the unreported Schedule C gross receipts at issue, and the claimed Schedule C expenses at issue that we must decide for each of the years at issue.

Based upon our examination of the entire record before us, we find that Mr. Justine has failed to carry his burden of establishing that for each of the years at issue (1) he is entitled to deduct the claimed Schedule A expenses at issue, (2) he does not have the unreported Schedule C gross receipts at issue from a certain business that he operated that respondent determined pursuant to respondent's bank deposits analysis,[15] and (3) he is entitled to deduct the claimed Schedule C expenses at issue.

We turn to the remaining issue presented under section 6662(a). Section 6662(a) imposes an accuracy-related penalty of 20 percent on the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, (1) negligence or disregard of rules or

---

[15]See supra note 14.

**[*16]** regulations, sec. 6662(b)(1), or (2) a substantial understatement of tax, sec. 6662(b)(2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code.  Sec. 6662(c).  Negligence has also been defined as a failure to do what a reasonable person would do under the circumstances.  See Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992), aff'g T.C. Memo. 1991-179; Antonides v. Commissioner, 91 T.C. 686, 699 (1988), aff'd, 893 F.2d 656 (4th Cir. 1990).  The term "negligence" also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).

For purposes of section 6662(b)(2) an understatement is equal to the excess of the amount of tax required to be shown in the tax return over the amount of tax shown in the return.  Sec. 6662(d)(2)(A).  An understatement is substantial in the case of an individual if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown in the tax return for that year or $5,000.  Sec. 6662(d)(1)(A).

**[\*17]**  The accuracy-related penalty does not apply to any portion of an underpayment if it is shown that there was reasonable cause for, and that the taxpayer acted in good faith with respect to, such portion.  Sec. 6664(c)(1).  The determination of whether the taxpayer acted with reasonable cause and in good faith depends on all the pertinent facts and circumstances, including the taxpayer's efforts to assess the taxpayer's proper tax liability, the knowledge and experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Respondent bears the burden of production with respect to the accuracy-related penalties under section 6662(a) that respondent determined in the notice.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose" the penalty.  Higbee v. Commissioner, 116 T.C. at 446.  Although respondent bears the burden of production with respect to the penalty under section 6662(a), respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues."  Id.

**[\*18]**  On the record before us, we find that respondent has satisfied respondent's burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a).[16]

At trial, Mr. Justine testified that he should not be liable for each of the years at issue for the accuracy-related penalty because he contends that there is no underpayment for any of those years.  Our holdings above reject that contention.

On the record before us, we find that Mr. Justine has failed to carry his burden of establishing that there was reasonable cause for, and that he acted in good faith with respect to, the underpayment for each of the years at issue.

Based upon our examination of the entire record before us, we find that Mr. Justine has failed to carry his burden of establishing that he is not liable for each of the years at issue for the accuracy-related penalty under section 6662(a).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

---

[16]For example, Mr. Justine kept no books or adequate records with respect to his transportation business.  In addition, Mr. Justine failed to substantiate properly the claimed Schedule A expenses at issue and the claimed Schedule C expenses at issue for each of petitioners' taxable years 2012, 2013, and 2014.

**[*19]**  To reflect the foregoing and the concession of respondent with respect to

taxable year 2013,

An order granting respondent's

motion to dismiss for lack of prosecution

as to petitioner, Carline Charlot Justine, and

decision under Rule 155 will be entered.
